**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Bonnie Barger,                          )
                                        )
         Plaintiff,                     ) Case No. 1:07-CV-381
                                        )
     vs.                                )
                                        )
Commissioner of Social                  )
Security,                               )
                                        )
         Defendant.                     )

                       O R D E R

         This matter is before the Court on Magistrate Judge

Black's Report and Recommendation of August 13, 2008 (Doc. No.

13) and the Commissioner of Social Security's objections to the

Report and Recommendation (Doc. No. 14).  In his Report and

Recommendation, Magistrate Judge Black concluded that the

Administrative Law Judge's ("ALJ") determination that Plaintiff

is not disabled was not supported by substantial evidence.

Therefore, Magistrate Judge Black recommended that the ALJ's

decision be reversed and the case remanded with instructions to

award Plaintiff benefits.  In his objections, the Commissioner

argues that the Magistrate Judge improperly re-weighed the

evidence and, therefore, the decision of the ALJ should be

affirmed.  Alternatively, the Commissioner argues that the case

should be remanded to the ALJ to determine whether, based on a

sedentary RFC, Plaintiff can perform a significant number of jobs

from the alleged onset date of disabiility.  For the reasons that
follow, the Commissioner's objections to the Report and
Recommendation are **OVERRULED IN PART AND SUSTAINED IN PART.**  The
Court **ADOPTS** the Report and Recommendation to the extent that
Magistrate Judge Black determined that the ALJ erred in assessing
the side effects of Plaintiff's medications.  The decision of the
ALJ denying Plaintiff's claim for Supplemental Security Income
("SSI") and Disability Insurance Benefits ("DIB") is, therefore,
**REVERSED**, and this matter is **REMANDED** to the ALJ pursuant to
sentence four of 42 U.S.C. § 405(g) for further proceedings
consistent with this order.  ("The court shall have power to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing.").

## I. Background

Plaintiff Bonnie Barger filed a claim for SSI and DIB
benefits on March 28, 2004.  She alleged an onset date of
disability of July 15, 2001 because of arthritis, diabetes,
depression, and fatigue caused by depression and side effects
from her medications.  At the outset, the Court notes that
although Plaintiff claimed disability in part based on arthritis
and diabetes, the ALJ found that Plaintiff's arthritis is a non-
severe impairment and that her diabetes was a non-severe

impairment after late 2003 or 2004.  20 C.F.R. § 419.921; <u>Farris</u> <u>v. Secretary of Health & Human Serv.</u>, 773 F.2d 85, 88-89 (6th Cir. 1985) (non-severe impairments do not "significantly limit [the claimant's] physical or mental abilities to do basic work activities" and result in a finding of non-disability). Plaintiff did not assign error to either one of those determinations.  Accordingly, the Court's focus shall be on the evidence relating to Plaintiff's depression and fatigue.

Plaintiff was age 46 at the time of filing of her application for SSI and DIB benefits.  Plaintiff has a high school education and her past relevant work was as an administrative assistant, a records administrator, a general office clerk, and a cashier/clerk.  These were semi-skilled to skilled jobs in the sedentary to light exertional levels.

The record reflects that Plaintiff began treatment with Dr. Melissa Schroer for depression in June 2000 after the death of her mother.  TR 170.  Plaintiff was given a prescription for Paxil, an anti-depressant.  It appears that Plaintiff first began complaining of increased fatigue and loss of concentration during a follow-up visit on June 28, 2000.  TR 173.  A September 28, 2000 office note indicates that Plaintiff "feels pretty good" but had stopped taking the Paxil because it was making her fatigued. TR 177.  Dr. Schroer diagnosed Plaintiff with depression and started her on Prozac at that time.  <u>Id.</u>

On February 28, 2001, Plaintiff returned to see Dr. Schroer because of additional personal crises. Plaintiff reported being a "nervous wreck," being "non-functional," and having poor sleep and nausea, but there were no complaints of fatigue noted. TR 184. Apparently at about this time, Plaintiff began treating with Dr. Kode Murthy, a psychiatrist. According to a March 27, 2001 office note of Dr. Schroer, Dr. Murthy had increased Plaintiff's Prozac dosage and Plaintiff had complained that it made her too tired. TR 185. Other office notes of Dr. Schroer are in the record at pages 390 to 401. These reflect other complaints of drowsiness or fatigue by Plaintiff on October 3, 2001 and May 30, 2002. Tr. 394, 397.

In May 2001, Dr. Murthy completed a disability questionnaire concerning Plaintiff for the Bureau of Disability Determination ("BDD"). As is relevant here, Dr. Murthy indicated that Plaintiff's abilities to remember, understand and follow instructions, maintain attention, sustain concentration, persist at tasks, and complete tasks in a timely fashion were moderately affected. Plaintiff's social functioning and adaption skills were "less than adequate." Plaintiff's ability to withstand work pressure was poor. TR 297.

In July 2001, reviewing psychologist Dr. Steven Myer completed a psychiatric review technique form in which he found that Plaintiff had only mild to moderate mental impairments and

4

that she would be capable of performing simple work without strict production quotas, with minimal social interaction, regular supervision, and scheduled breaks to assist with attention, concentration, and pace. TR 328.

In October 2001, Dr. Regina Kohls, with whom Plaintiff had recently begun treating, reported to the BDD that physically, Plaintiff would be able to perform a desk job. However, Dr. Kohls stated that Plaintiff self-reported that she was unable to work due to fatigue. TR 341. Dr. Kohl's office notes show that Plaintiff complained of fatigue in July 2001 and that she told Dr. Kohl that she was "too tired to work" on October 26, 2001. TR 356-57.

In December 2001, Dr. Murthy completed a second mental health questionnaire for the BDD. Dr. Murthy indicated that Plaintiff was moderately limited in the abilities to relate to fellow workers and supervisors, understand and follow instructions, maintain the attention required to follow simple tasks, and withstand ordinary job stress. Later, however, Dr. Murthy indicated that Plaintiff had significant limitations in understanding and memory, sustained concentration and persistence, and social interaction and adaption. TR 351. There was no indication in this report that fatigue played any part in Plaintiff's limitations.

Some of Dr. Murthy's office notes are located at pages 380 to 385 of the record, and frankly, many parts of them are illegible. However, on April 19, 2001, Dr. Murthy noted that Plaintiff complained that a dose of 60mg of Prozac was making her sleepy and that he was decreasing the dose to 40 mg. TR 385. Other office notes of Dr. Murthy are in the record at pages 686-691 of the record. These cover the period from December 2001 through November 2004. Again, although difficult to decipher, they do not reflect that Plaintiff complained to Dr. Murthy about fatigue during this period.

Dr. Schroer's office notes from the period January 2003 to January 2005 are at pages 713 to 733 of the record. Plaintiff complained about increased fatigue on January 20, 2003. TR 733. Plaintiff's next complaint of fatigue, as reflected in the notes, does not occur until January 19, 2004. TR 726. Dr. Schroer recorded that Plaintiff stated that she "just can't stay awake" and that her "daytime drowsiness is terrible." Id. Dr. Schroer further documented Plaintiff stating that she is "safe for 2-3 hours" but that she "doesn't feel tired [before] she falls asleep." Id. Dr. Schroer believed that Plaintiff needed to see a sleep specialist. Id.[1]

---

[1] Plaintiff in fact had undergone a sleep study on October 22-23, 2003. The study showed that Plaintiff does not have narcolepsy or obstructive sleep apnea. In fact, the study concluded that Plaintiff does not have a seriously abnormal sleep pattern. TR 599-60.

Plaintiff complained again about falling asleep during the day - and even during the middle of conversations - on April 19, 2004. TR 724. Dr. Schroer decreased Plaintiff's Prozac dose and started her on Effexor. It also appears that Dr. Schroer prescribed 5mg of Ritalin to overcome lethargy. Id. On May 21, 2004, Dr. Schroer noted that although the Ritalin was causing Plaintiff dizziness and constipation, it was "really helping with the daytime drowsiness." TR 722. Therefore, Dr. Schroer planned to change Plaintiff's Ritalin dosage from 5mg twice a day to 10mg slow release. Id.

On July 6, 2004, Dr. Schroer noted that Plaintiff had stopped taking her medications due to fatigue. Plaintiff then resumed taking her medication. Dr. Schroer wrote that the Ritalin "is now [working] well" and that Plaintiff's depression was "well-controlled on meds." However, Dr. Schroer noted, Plaintiff "must continue as she's currently doing." TR 720. Plaintiff had no complaints of drowsiness or fatigue during her next two visits on August 23, 2004 and October 21, 2004. Plaintiff then complained about falling asleep "after a few hours of working" on December 1, 2004. TR 714.

Plaintiff began treating at the Price Hill Clinic in February 2005 and the initial intake form notes Plaintiff's problem staying awake during the day. TR 612. There appears to be a complaint of fatigue on April 14, 2005. TR 606. There was

no such complaint on a June 6, 2005 office visit but another complaint of fatigue occurred on June 27, 2005. TR 604-605.

Plaintiff was also receiving psychiatric treatment over roughly this same period from Greater Cincinnati Behavioral Health Services. On the initial intake assessment, Plaintiff reported her continued problems with daytime fatigue. TR 570. She further reported taking Prozac, Effexor, and Topamax, but that she had stopped taking Ritalin. Id. at 570. In a July 1, 2005 office note, Plaintiff's treating psychiatrist, Dr. Pacita David, noted that he planned an upward taper of Plaintiff's Topamax and Prozac doses. TR 560. In an August 12, 2005 follow-up note, Dr. David indicated that Plaintiff was tolerating both the Topamax and Prozac increases. TR 561. This note does not reflect any complaints of fatigue or drowsiness. An October 2005 office note indicates a change of Topamax to "am dosing as pt prefers it this way" with continuing Prozac "as is." TR 682. There were no complaints of fatigue on this visit. Dr. David then decreased Plaintiff's Prozac dose in February 2006 at her request. TR 680. Dr. David then had to increase Plaintiff's Prozac dosage in May 2006 because Plaintiff's symptoms were exacerbated. TR 677. Dr. David then again decreased Plaintiff's Prozac in August 2006 at her request and increased the dosage of Topamax. TR 674.

On October 3, 2006, Plaintiff was seen by Dr. Wayne Harrison instead of Dr. David. Plaintiff repeated to Dr. Harrison that she always feels tired, but Dr. Harrison noted that "pyschotropics seem to be @ right dose." TR 671-72.

Other office notes from the Price Hill Clinic from the period from October 2005 to October 2006 indicate one instance of a complaint of fatigue or drowsiness. A March 22, 2006 office note reports, "Recently falling asleep early evening [sic] before she takes Metform[in] in pm. Taking it in am/instead of t [time] that is Rxd." TR 701. The note then states, "thinks arthritis med (Motrin) makes her sleepy." TR 700-701. "She will see if fatigue improves [with] 1) Augmentin 2) D/Cn [discontinue] Motrin & use Tylenol. If fatigue persists, will order sleep study." TR 700.

On May 6, 2006, in response to a request from Plaintiff's counsel to state whether there are any objective findings supporting her claim of disability, Dr. Schroer wrote:

> In response to your request regarding objective findings to support her disability, I am unable to provide these at this time due to there being none. However, with that in mind, she does have increased drowsiness/sleepiness, and cannot work for longer than two hours without taking a nap or going to sleep. We have attempted the use of meds to alter this to no avail. Her chronic medical conditions of major depressive disorder, and hypertension contribute to this. In addition, despite multiple medical trials, we have been unable to alter the side effects she experiences. The major side effect she exhibits is excessive daytime drowsiness.

TR 663.

On March 3, 2005, Dr. David Chiappone completed a
mental health assessment of Plaintiff after interviewing her.  TR
634-37.  Dr. Chiappone concluded that Plaintiff has major
depression and is not malingering.  TR 636-37.  However, Dr.
Chiappone concluded that Plaintiff is capable of understanding
simple one and two-step job instructions and that she is only
mildly impaired in remembering such instructions.  He also found
that Plaintiff is only mildly impaired in her ability to maintain
concentration and attention.  Dr. Chiappone stated that Plaintiff
can relate to co-workers, supervisors, and the public and that
she is able to carry out and persist over time.  He also found
that Plaintiff has mildly reduced ability to withstand stress.
Finally, Dr. Chiappone concluded that Plaintiff had a GAF of 58[2]
and that she is capable of doing basic tasks.  TR 637.

On October 5, 2005, Dr. Kevin Eggerman performed a
psychiatric consultative examination of Plaintiff on behalf of
the BDD.  In concluding his report, Dr. Eggerman found that

---

[2]     A GAF (Global Assessment of Functioning) in the range
of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks), or moderate
difficulty in social, occupational, or school functioning (e.g.,
few friends, conflicts with peers or co-workers)."  Kornecky v.
Commissioner of Social Sec., 167 Fed. Appx. 496, 503 (6th Cir.
2006).

Plaintiff has dysthymia, in partial remission.[3]  Her current GAF
was 60-65, and had been as high as 65 in the past year.  Dr.
Eggerman stated that Plaintiff has no limitations in her ability
to understand and remember short and simple instructions and no
limitations in her ability to carry out those instructions.  Her
ability to understand, remember, and carry out detailed
instructions is only minimally limited.  Plaintiff's ability to
make judgments on simple work-related decisions is not limited.
Dr. Eggerman found that Plaintiff is only mildly limited in her
ability to interact appropriately with co-workers, supervisors
and the public.  Plaintiff's ability to withstand work pressure
is only mildly to moderately limited.  Finally, Dr. Eggerman
found that Plaintiff's ability to respond to changes in a routine
work setting is mildly limited.  TR 526.

On October 12, 2005, Dr. Murthy completed an Ability to
Do Work-Related Activities (Mental Form) that was consistent with
Dr. Eggerman's report, i.e., Plaintiff mostly has no or only
slight mental limitations affecting her ability to work. TR 528-
30.  On March 2, 2006, Dr. Murthy wrote a letter to Plaintiff's
counsel stating that the symptoms of her depression were of mild
to moderate severity.  TR 666.

---

[3]     "Dysthymia is a less severe form of depression whose
signs and symptoms can be the same as in major depression, only
less numerous and less severe."  Covucci v. Apfel, 31 Fed. Appx.
909, 911 n.2 (6th Cir. 2002) (internal quotation marks omitted).

On March 16, 2005, Dr. Jennifer Bailey performed a consultative physical examination of Plaintiff that was "completely normal." TR 639-42. In pertinent part, Dr. Bailey summarized her findings as follows:

> [T]his is an obese middle-aged woman who states that she is unable to work due to "I need a lot of sleep. I'm tired all the time." Other than her obesity, today's physical examination was completely normal. . . . She does have a history of depression and takes multiple medications which can certainly contribute to her reported fatigue. However, I can detect no organic reason for her fatigue.

TR 641-42.

On September 28, 2005, Dr. Bailey completed a second consultative physical examination of Plaintiff on behalf of the BDD. TR 531-34. In concluding her report, Dr. Bailey stated:

> Other than her obesity today's physical examination was completely normal. In fact, patient was alert and oriented and a good historian. The patient has no evidence of organic causes for fatigue or somnolence, and was not somnolent during the examination. . . . Her blood pressure is poorly controlled and perhaps some of the medications she is on may contribute to her somnolence, but I could find no physical cause for it.

TR 533.

As indicated, Plaintiff filed a claim for SSI and DIB benefits on March 28, 2004 alleging an onset date of disability of July 15, 2001. Plaintiff's claim was denied at the state agency level and she requested and received a hearing before an ALJ. After an evidentiary hearing, the ALJ issued a decision denying Plaintiff's claim. The Appeals Council, however, vacated

the ALJ's decision because it did not contain an adequate evaluation of Plaintiff's alleged or reported mental impairments. TR 444. In vacating the decision, the Appeals Council ordered the ALJ to offer Plaintiff a new hearing. TR 447.

The ALJ held the second hearing on Plaintiff's claim on October 26, 2006. During the hearing, Plaintiff, Dr. John Kincaid, a medical expert, and Janet Rogers, a vocational expert testified. TR 769.

Plaintiff testified that she lives alone in a one-bedroom apartment. TR 779. Plaintiff said that she believes her physical and mental conditions had worsened since the previous hearing. TR 780, 795. Plaintiff also felt that her depression had worsened. TR 794. Plaintiff said that she sleeps too much and has low energy. Id. Plaintiff sometimes has difficulty with concentration but has no problems with her memory. TR 794-95. She has crying spells a couple of times a week. Id. Plaintiff gets along well with other people and has supportive friends and family. TR 795-96. She leaves her apartment for doctors appointments, grocery shopping, and to see friends. TR 796. Plaintiff is able to drive. Plaintiff said that she sleeps a lot during the day. She is able cook, clean, and do laundry and other housework. Id. 796-98. Plaintiff does not engage in any recreational activities or hobbies. TR 797. She watches television and is able to groom herself and pay bills. Id.

On examination by her counsel, Plaintiff stated that she can no longer use the computer because of difficulties concentrating. TR 798. With regard to driving, Plaintiff said that she has to plan her trips within her "two hour limit" so that she does not fall asleep. TR 799. Plaintiff said that she cannot do all of her housework at once because of fatigue. TR 800-01. She has to do her housework in 15 minute increments. TR 801. She usually has TV dinners for meals. Id.

Dr. Kincaid then testified as a neurologist. Dr. Kincaid reviewed all of Plaintiff's medical records, but of particular relevance here is his testimony concerning the side effects of her medications. In that regard, Dr. Kincaid testified that Varapamil, Topamax, and Loratadine could be contributing to Plaintiff's fatigue. TR 807. Other than as a side effect of her medications, Dr. Kincaid could not find a reason for Plaintiff's fatigue and drowsiness. TR 809. Dr. Kincaid further stated, however, that fatigue and drowsiness complained of by Plaintiff is beyond what he would attribute to those medications, either individually or in combination. TR 809-10.

Finally, the vocational expert, Janet Rogers, testified. The ALJ asked Ms. Rogers to consider an individual with Plaintiff's education and past work experience, who can carry, push, or pull 20 pounds occasionally and 10 pounds

frequently. This person can stand or walk up to six hours in an eight hour day and can sit for eight hours a day. This person could occasionally stoop, kneel, and crouch but could not crawl or climb ladders, ropes or scaffolds. This person could occasionally climb ramps and stairs but could not operate automotive equipment, work around unprotected heights or hazardous machinery. Ms. Rogers testified that such a person could perform her past relevant work. With the added limitation that the individual is unable to remember or carry out detailed instructions, this person could not perform her past relevant work. TR 818. However, with this limitation, this person would be able to perform a number of unskilled jobs in the national and local economy, including light machine tender, inspector/sorter, night cleaner, and office cleaner. TR 818-19.

On January 27, 2008, the ALJ issued a second decision denying Plaintiff's claim for benefits. TR 17-32. In his decision, the ALJ determined that from the alleged date of onset of disability through no later than 2004, Plaintiff had the RFC to perform work activity with the exceptions of being limited to lifting, carrying, pushing, or pulling 20 pounds occasionally and 10 pounds frequently; standing or walking was limited to four hours in an eight hour day but for no longer than 30 minutes at a time; after that, Plaintiff should be able to sit for 15 minutes; Plaintiff could sit for eight hours a day but for no longer than

two hours at a time; Plaintiff could stoop, kneel, crouch, and climb ramps and stairs occasionally; Plaintiff could not crawl, climb ladders, ropes, or scaffolds, could not operate automotive equipment, work at unprotected heights, or around hazardous machinery; Plaintiff could not remember and carry out detailed instructions. After 2004, the ALJ found that Plaintiff could perform work activity with the only limitation being that, because of the possible side effects of her medication, she cannot climb ladders, ropes, or scaffolds, could not operate automotive equipment, work at unprotected heights, or around hazardous machinery. These findings are consistent with the requirements for performing work at the light level of exertion. See 20 C.F.R. § 416.967(b). Additionally, Plaintiff cannot remember and carry out detailed instructions. TR 28. With that RFC in mind, the ALJ found that Plaintiff is precluded from performing her past relevant work but that she can perform the jobs described by the vocational expert. TR 28, 30.

In arriving at this RFC, the ALJ gave significant weight to the opinions of Drs. Kohls and Lohr, who both indicated that Plaintiff is physically capable of performing sedentary work. TR 28. The ALJ also gave significant weight to the opinions of consulting psychiatrists, Drs. Eggerman and Chiappone, that Plaintiff has only mild mental limitations as being consistent with Dr. Murthy's March 2006 opinion and with

16

the fact that Plaintiff is able to live alone and function independently.  The ALJ gave some weight to Dr. Bailey's opinion which indicated that Plaintiff can work at the light level of exertion.  TR 26.

The ALJ also found that Plaintiff exaggerated the impact of her fatigue on her ability to function.  TR 27.  The ALJ found inconsistencies in Plaintiff's testimony concerning her ability to concentrate.  The ALJ stated that there were a "few references" to fatigue in the record.  However, the ALJ credited the testimony of Dr. Kincaid that Plaintiff's claims of fatigue were above and beyond what would be attributable to her medications.  TR 27.

On April 20, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  TR 9.

On May 15, 2007, Plaintiff filed a timely complaint for review of the ALJ's decision with this Court.  Plaintiff asserted five assignments of error: (1) the ALJ erred in failing to consider the side effects from her medications and depression; (2) the ALJ erred in failing to assess her mental impairments; (3) the ALJ erred in failing to give significant weight to the opinions of her longtime treating doctors; (4) the ALJ erred in assessing her credibility and

subjective complaints; and (5) the ALJ erred in considering improper hypotheticals of the vocational expert.

On August 13, 2008, Magistrate Judge Black issued a Report and Recommendation concluding that Plaintiff's first, second, and third assignments of error were well-taken and, consequently, that the ALJ's decision was not supported by substantial evidence. Doc. No. 13. Magistrate Judge Black determined that the ALJ erred in failing to give consideration to the side effects of Plaintiff's medication and, furthermore, that he erred by giving too much weight to Dr. Kincaid's opinion that Plaintiff's complaints of fatigue were above and beyond what should be caused by her medications. Magistrate Judge Black found that the record thoroughly demonstrated that Plaintiff has suffered from profound fatigue since 2000. Magistrate Judge Black also found that the ALJ erred by failing to give sufficient weight to the opinions of Plaintiff's treating physicians in concluding that she is capable of performing work at the light level of exertion. According to Judge Black, there was not substantial evidence to support that finding. Therefore, Judge Black concluded that the record only showed that Plaintiff is capable of performing sedentary work. Judge Black then noted that the Social Security regulations direct a finding of disability where the claimant is in the "approaching advanced age category," as Plaintiff is, and is limited to sedentary work.

Accordingly, Judge Black concluded that Plaintiff is disabled under the regulations and recommended that judgment be entered in her favor and the case be remanded with instructions to award Plaintiff benefits.

The Commissioner filed timely objections to Magistrate Judge Black's Report and Recommendation, arguing, as stated, that Judge Black reweighed the evidence and failed to give appropriate deference to the ALJ's findings. This matter is now before the Court on those objections.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ. See 42 U.S.C. § 405(g). The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence as a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health & Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Id. Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury. Id. If the ALJ's decision is supported by

substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health & Human Serv., 658 F.2d 437, 439 (6th Cir. 1981). The district court reviews de novo a magistrate judge's report and recommendation regarding social security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

### III. Analysis

Magistrate Judge Black first concluded that the ALJ erred in failing to consider the side effects of Plaintiff's medications. Magistrate Judge Black also found that the ALJ erred in giving significant weight to Dr. Kincaid's opinion because he did not examine Plaintiff, is not a sleep expert, did not consider Plaintiff's fatigue in combination with her depression, and did not discount the severity of her fatigue as reported by other practitioners. Finally, Magistrate Judge Black concluded that the ALJ erred by stating there was no evidence of fatigue in the record until 2004.

Contrary to the Report and Recommendation, the ALJ clearly did consider the side effects of Plaintiff's medications. Page 11 of his decision specifically references Dr. Kincaid's testimony that Topamax, Verapamil, and Loratadine can cause drowsiness. TR 27. The ALJ also noted that during one three-week period, Plaintiff had been taking Topamax without side

20

effects. Id. Moreover, although the Magistrate Judge found that the ALJ erred in the weight he assigned Dr. Kincaid's opinion, the ALJ clearly considered the side effects of Plaintiff's medications in referencing his opinion. Additionally, contrary the Magistrate Judge's findings, it appears that Dr. Kincaid implicitly if not explicitly discounted the opinions of the other practitioners when he testified that Plaintiff's complaints of fatigue were beyond what would be expected based on her medications. The Court, however, does agree with Magistrate Judge Black that the ALJ erred to the extent he found that Plaintiff's complaints of fatigue do not occur until 2004. The record documents contain complaints of fatigue by Plaintiff dating back to at least June 2000. This error, however, is not necessarily dispositive of the issue of whether the ALJ's decision should be sustained or reversed.

More accurately stated, the question before the Court is whether substantial evidence supported the ALJ's decision to rely on Dr. Kincaid's opinion and whether substantial evidence supported the ALJ's assessment of Plaintiff's subjective complaints of chronic fatigue.

In assessing the claimant's subjective complaints, the ALJ is entitled to consider the claimant's credibility. Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). Indeed, "an ALJ's findings based on the credibility of

the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. Nevertheless, the ALJ's determination of the claimant's credibility must be supported by substantial evidence. Id. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Id.

The Social Security regulations, at 20 C.F.R. § 416.929(a), set forth the procedure for evaluating a claimant's subjective complaints:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. Id. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. Id.; see also Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2-3 (July 2, 1996) (Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements).

Rogers v. Commissioner of Social Sec., 486 F.3d 234, 247 (6th

Cir. 2007).

The Court finds that the ALJ's decision to discount, if not completely reject, Plaintiff's subjective complaints of fatigue was not supported by substantial evidence. It is true that the record is uncontradicted that there is no physical reason for Plaintiff's fatigue and drowsiness. Dr. Schroer and Dr. Bailey, one of the consulting physicians, agreed on that point. However, Dr. Schroer found that Plaintiff's depression and hypertension contributed to her fatigue, while Dr. Kincaid stated that the side-effects of her medications should not be as severe as she reported. Nevertheless, as Magistrate Judge Black observed, unlike Dr. Schroer, Dr. Kincaid never considered the combined effect of Plaintiff's depression and the side-effects of her medication in causing fatigue.

Moreover, while it is true that the record shows some periods where Plaintiff's fatigue was under control, the record clearly demonstrates that, over the course of time, her treating physicians never found a combination or mix of medications that alleviated her excessive fatigue. Thus, in that regard, as Magistrate Judge Black found, the ALJ clearly erred in finding that Plaintiff's first complaints of fatigue are found in 2004. Rather, as stated, Plaintiff complained of fatigue fairly persistently from at least 2000.

Additionally, the ALJ's reasons for finding Plaintiff's testimony inconsistent are not supported by substantial evidence. The ALJ found that Plaintiff was inconsistent because, despite her claim of decreased concentration, she testified that she can watch television or listen to the radio for up to two hours at time. This testimony, however, is actually consistent with her overall claim that she can only engage in any activity for two hours before she is overcome with fatigue. The ALJ also found that Plaintiff was inconsistent because she testified that she lives alone but elsewhere stated lived with her sons. These are not inconsistencies, however. A complete review of the record indicates that at different times, depending on her financial situation, Plaintiff lived alone, with one of her sons, or with friends. The ALJ also thought that Plaintiff was inconsistent because she stated that she could not complete any task because of pain in legs, but also stated that she can do her own household chores. Plaintiff, however, testified that she can only work at household chores for about fifteen minutes before she has to rest. Therefore, her testimony is essentially consistent. Moreover, Plaintiff's ability to complete routine household chores is not indicative of her ability to complete work activities. <u>Rogers v. Commissioner of Social Sec.</u>, 486 F.3d 234, 248-49 (6th Cir. 2007) (holding that claimant's ability to drive, clean her apartment, care for two dogs, do laundry, read,

do stretching exercises, and watch the news are "somewhat minimal daily functions [which] are not comparable to typical work activities.").

Under the treating physician rule, opinions of physicians who have treated the claimant receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ finds that either of these criteria have not been satisfied, he is required to apply the following factors in determining how much weight to give a treating physician's opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." <u>Wilson v. Commissioner of Social Sec.</u>, 378 F.3d 541, 544 (6th Cir. 2004). The opinion of a treating physician will generally be entitled to more weight than the opinion of a one-time consulting physician. <u>Hephner v. Mathews</u>, 574 F.2d 359, 362 (6th Cir. 1978).

The Court agrees with the Magistrate Judge that the opinions of Plaintiff's treating physicians were entitled to the most weight. As Magistrate Judge Black found, although Dr. Kincaid testified that Plaintiff's medications should not cause

the fatigue she complained of, he did not consider whether the medications in combination with her depression could result in her reported level of fatigue. Dr. Kincaid did not believe that Plaintiff was being over-medicated and there was no physician, including any examining or consulting physician, who found that Plaintiff was not credible about her complaints of fatigue. Indeed, Dr. Chiappone, a consulting psychiatrist specifically indicated that Plaintiff did not appear to be malingering. Tr. 636. Therefore, the ALJ should have given significant weight to the opinion of Dr. Schroer that Plaintiff is only able to work for two hours at a time. Accordingly, to this extent the Commissioner's objections to the Report and Recommendation are not well-taken and are **OVERRULED.**

As a consequence, the Court finds that the ALJ's hypothetical to the vocational expert was erroneous because it did not take into account the fact that Plaintiff's fatigue from her medications limits her to two hours of activity at a time. "Substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question, but only if the question accurately portrays [claimant's] individual physical and mental impairments." Pasco v. Commissioner of Social Sec., 137 Fed. Appx. 828, 845 (6th Cir. 2005) (quoting Varley v. Secretary of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)) (internal quotation marks omitted). Because the

ALJ's hypothetical did not include a proper limitation concerning Plaintiff's fatigue, his conclusion that Plaintiff is capable of performing a substantial number of jobs in the national economy was not supported by substantial evidence.

Nevertheless, the Court finds that the ALJ's conclusion that Plaintiff is capable of performing work at the light level of exertion was supported by substantial evidence. Magistrate Judge Black found that the ALJ erred because, in giving significant weight to the opinions of treating physicians Drs. Lohr and Kohls, he failed to adopt their conclusions that Plaintiff is limited to sedentary work. However, although perhaps ambiguous, Dr. Kohls never specifically limited Plaintiff to sedentary work. Rather, she said that Plaintiff is physically capable of performing a desk job. Moreover, the Court observes that Dr. Kohls did not impose any exertional or weight limitations in her assessment. Similarly, the only limitations imposed by Dr. Lohr were no prolonged sitting or standing. It appears that the ALJ incorporated both of these opinions in finding that Plaintiff's ability to perform light work through the end of 2003 was limited in relevant part by the sit/stand requirements he included in the RFC. Therefore, it appears that the ALJ appropriately accounted for the limitations noted in the opinions of Dr. Lohr and Dr. Kohls. However, both of Dr. Bailey's opinions support the ALJ's conclusion that Plaintiff is

physically capable of performing a range of light work after
2003, except for certain limitations on working around
unprotected heights, etc., which are necessitated by her
medications.  Although Dr. Bailey was a consulting physician,
there was no opinion of a treating physician, <u>for this time</u>
<u>period</u>, which contradicted her opinions.  Therefore, the ALJ was
entitled to rely on Dr. Bailey's opinion in concluding that
Plaintiff has the RFC to perform at the light level of exertion
after 2003.  Accordingly, to that extent, the Commissioner's
objections to Magistrate Judge Black's Report and Recommendation
are well-taken and are **SUSTAINED.**

In summary, however, because the ALJ's hypothetical to
the vocational expert failed to properly account for the
limitations imposed by Plaintiff's fatigue, his decision finding
that Plaintiff is not disabled was not supported by substantial
evidence.  In such a case, the appropriate remedy is to remand
the case for further vocational testimony.  <u>Faucher v. Secretary</u>
<u>of Health & Human Serv.</u>, 17 F.3d 171, 175-76 (6th Cir. 1994).
The Court, however, expresses no opinion whether a limitation of
two hours of activity before resting is compatible with
performing work at the light level of exertion.  Accordingly, the
decision of the ALJ finding that Plaintiff is not disabled is
**REVERSED**.  This matter is **REMANDED** to the ALJ pursuant to

sentence four of 42 U.S.C. § 405(g) for further proceedings
consistent with this order.

**IT IS SO ORDERED**

Date November 20, 2008            s/Sandra S. Beckwith
                                Sandra S. Beckwith, Chief Judge
                                 United States District Court